Walter H. SCHULZ, Jack Phillips, Earl Becker, and American Legion Post # 497, Appellants–Plaintiffs,

v.

STATE of Indiana and The Indiana Gaming Commission, Appellees–Defendants.

No. 31A01–9907–CV–240.

Court of Appeals of Indiana.

July 14, 2000.

Richard A. Waples, Waples & Hanger, Indianapolis, Indiana, Attorney for Appellants.

Karen Freeman–Wilson, Attorney General of Indiana, Beth H. Henkel, Frances Barrow, Deputy Attorneys General, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

Walter Schulz, Jack Phillips, Earl Becker (Landowners) and American Legion Post # 497 (American Legion) appeal from the dismissal of their claim against the State and the Indiana Gaming Commission (Commission). Although they raise several issues for review, we find one dispositive: whether Landowners and American Legion have standing to challenge the riverboat gambling law.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In the 1993 Special Session, the Indiana General Assembly authorized riverboat gambling as an exception to the general prohibition on gambling. The Commission was established and authorized to issue up to eleven licenses to operate riverboat casinos. One such license was approved for a riverboat casino on the Ohio River in Harrison County. Pursuant to the license, preparations began for construction of a riverboat casino at the approved site.

Landowners own land near the casino site and claim that their quality of life will be adversely affected by the operation of the casino. They claim injury to their aesthetic interests and peaceful way of life, such as increased travel time from heavier traffic. American Legion is prohibited from operating video games of chance for profit, while such games are permitted on riverboat casinos.

Landowners and American Legion filed suit against the State and the Commission alleging that the legislation authorizing riverboat casinos was unconstitutional because it combined legislation on multiple subjects and because it granted unequal privileges and immunities. The State and the Commission filed a motion to dismiss, arguing that the Plaintiffs lacked standing and failed to state a claim upon which relief could be granted. The trial court held that the Plaintiffs lacked standing to bring their claim, and moreover, that the Plaintiffs' suit was barred by laches. They now appeal.

## DISCUSSION AND DECISION

The trial court granted the State and the Commission's motion to dismiss, agreeing that the Plaintiffs lacked standing to bring their constitutional challenge to the riverboat gambling law. An allegation that a party lacks standing is properly filed under Ind. Trial Rule 12(B)(6). *Lake County Council v. State Bd. of Tax Comm'rs,* 706 N.E.2d 270, 279–80 (Ind. Tax Ct.1999) (*citing City of New Haven v. Allen County Bd. of Zoning Appeals,* 694 N.E.2d 306, 311 (Ind.Ct.App.1998), *trans. denied*; *Musgrave v. State Bd. of Tax Comm'rs,* 658 N.E.2d 135, 138–39 (Ind. Tax Ct.1995); *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 594 (2d Cir.1993)). A decision that a party lacks standing pursuant to Trial Rule 12(B)(6) operates as an adjudication on the merits. *Id.*

A motion to dismiss under Ind. Trial Rule 12(B)(6) tests the legal sufficiency of the claim, not the facts which support it. *Collard v. Enyeart,* 718 N.E.2d 1156, 1158–59 (Ind.Ct.App.1999), *trans. denied* (2000). Review of a dismiss-

al under Trial Rule 12(B)(6) is de novo, and thus deference is not required with regard to the trial court's decision. *Id.* On review, we determine whether the complaint states any allegation upon which relief can be granted. *Id.* We evaluate the complaint in the light most favorable to the plaintiff with every inference in his favor. *Runde v. Vigus Realty, Inc.,* 617 N.E.2d 572, 575 (Ind.Ct.App.1993). A complaint cannot be dismissed under 12(B)(6) unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Collard,* 718 N.E.2d at 1158–59.

 Plaintiffs argue that the trial court erroneously determined that they lack standing to pursue their single subject and equal privileges claims. The standing requirement acts "as an important check on the exercise of judicial power by Indiana courts." *Pence v. State,* 652 N.E.2d 486, 488 (Ind.1995). It is a key component of Indiana's constitutional scheme of separation of powers. *Lake County Council,* 706 N.E.2d at 279–80. It mandates that the courts act in real cases and refrain when called to engage in abstract speculation. *Pence,* 652 N.E.2d at 487. It is a prudential limitation on the ability of individuals to seek redress in our courts and may be raised at any point during the litigation either by the parties or the court sua sponte. *Collard,* 718 N.E.2d at 1159.

 The main purpose of standing is to insure that the party before the court has a substantive right to enforce the claim that is being made in the litigation. *Pence,* 652 N.E.2d at 487. The standing requirement restricts the courts to real controversies in which the complaining party has a demonstrable injury. *Collard,* 718 N.E.2d at 1159. To possess standing, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he has sustained or was in immediate danger of sustaining some direct injury as a result of the conduct at issue. *Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 (Ind.1990) (quoting *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind. 1985)); *id.*

 Federal limits on justiciability have no direct applicability because the Indiana constitution contains no "case or controversy" requirement. *Pence,* 652 N.E.2d at 488. However, we find them instructive because the standing requirement under both federal and state constitutional law fulfills the same purpose: ensuring that "the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Further, both are built on the same basic idea: separation of powers. *Compare id.* at 750, 104 S.Ct. at 3325 *with Pence,* 652 N.E.2d at 488. To have standing under the federal test, a plaintiff must allege personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and is likely to be redressed by the requested relief. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324.

 Moreover, in addition to constitutional considerations, federal courts have also developed prudential limits on standing which do not originate with the text of the United States Constitution, but spring from the judicial branch's own decision that acting in such cases is inappropriate. *See* JOHN E. NOWAK ET AL., CONSTITUTIONAL LAW 81 (2d ed.1983). This court has explained such prudential limitations as follows:

> "A court will consider: (1) whether the party's complaint falls within the zone of interests protected by the statute in question; (2) whether other governmental institutions are more competent to address the question and (3) whether the plaintiff is asserting his own legal rights and interests instead of relying on the legal rights or interests of third parties."

*City of Evansville on Behalf of Dep't of Redevelopment v. Reising,* 547 N.E.2d 1106, 1113 (Ind.Ct.App.1989), *trans. denied*

(1990). Because these considerations are not dependent on any particular text, but rather, are based on notions of separation of powers, we find them equally applicable to questions of standing under the Indiana constitution.

## I. Equal privileges claim

Section 23 of the Indiana constitution prohibits laws that "grant" unequal privileges or immunities. *Collins v. Day*, 644 N.E.2d 72, 74 (Ind.1994). *See also* U.S. CONST., amend. XIV (using a different approach by prohibiting laws which abridge privileges and immunities). As our supreme court explained,

> "[A]t the time of the adoption of Section 23 and its ratification as part of the 1851 Indiana Constitution, the principal purpose was to prohibit the state legislature from affirmatively granting any exclusive privilege or immunity involving the state's participation in commercial enterprise. Section 23 does not appear to have been enacted to prevent abridgement of any existing privileges or immunities, nor to assure citizens the equal protection of the laws."

*Collins*, 644 N.E.2d at 77. The court laid out the standard for evaluating equal privileges claims in *Collins*. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. *Id.* at 80. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion. *Id.* We examine whether Landowners and American Legion have standing to bring this type of claim.

### A. Landowners

▪ We begin the standing analysis by looking at the nature of the right the plaintiff is pursuing, i.e., the plaintiff's personal stake in the outcome of the litigation. Landowners allege that they have standing because of the injury to their peaceful way of life. Landowners are not asserting any statutory rights, but rather, are suing under a purely constitutional cause of action. Thus, we must determine whether the constitution protects the interest they claim is at stake. The Indiana constitution protects a person's right to his property. *See* INDIANA CONST., art. I, § 21. Landowners, in alleging damage to their aesthetic interests, such as noise, traffic, and damage to bucolic surroundings, are in essence claiming damage to their property. This is the only legally protectible injury identified in their complaint.

Next, we examine the constitutional provision invoked. Here, Landowners rely on the Equal Privileges clause. In this case, Landowners challenge a law that allows for the operation of a riverboat casino near their property. The statute does not restrict their own property rights, but merely changes the nature of their surroundings. This harm is too remote to fall within the zone of interests protected by the constitutional protection of equal privileges. The concept of equal privileges is not broad enough to include the ability of private citizens to challenge the use to which neighboring landowners put their land in order to preserve their peaceful, scenic surroundings. If Landowners had a stronger claim to the land in question here, our result might be different. However, here they allege no right to use the privately owned land. Instead, they claim harm merely from the adverse effects that the casino development will have on their own land and lifestyle. This harm is outside the zone of interests and simply too remote to confer standing. The trial court did not err in determining that Landowners lack standing to pursue their claim

### B. American Legion

▪ American Legion asserts that it has standing because it "has been raided by law enforcement officers, has had its funds confiscated and forfeited, has had its

liquor license suspended, has been fined, and its employees have been threatened with arrest and criminal prosecution." *Record* at 24.

Here, the challenged statute granted the privilege to seek one of eleven licenses to operate a riverboat gambling operation. The ability to compete for the licenses was equally available to all. American Legion has not alleged that the statute prevented anyone from competing for the licenses. Indeed, nothing in the statute prevented American Legion from attempting to obtain a license. American Legion has not alleged that it sought or attempted to obtain one of these licenses. Thus, it does not have standing to challenge the constitutionality of the statute.

Further, we note that American Legion's claim also fails the redressability requirement of standing. *See Allen*, 468 U.S. at 751, 104 S.Ct. at 3324 (relief from injury must be likely to follow from favorable decision). The injury American Legion identifies is its inability to operate games of chance for profit. Even if American Legion obtained the relief it seeks here and the law were declared invalid, it would still not be entitled to operate its games of chance for profit. The result of American Legion's suit would be that no one would be able to operate such games. The trial court did not err in determining that American Legion lacked standing to pursue this claim.

## II. Standing—Single subject violation

 Plaintiffs also allege that the enactment of the riverboat gambling law violated the single subject requirement of the Indiana Constitution. They claim no particular harm from this violation. Indulging in an inference in their favor, as we must in this procedural posture, they claim injury as citizens of the State in that the statute was enacted in a manner contrary to the Constitution.

In *Pence*, 652 N.E.2d at 488, our supreme court held that a citizen taxpayer did not have standing to challenge a law that amended sections of the Indiana Code to make it conform to the Americans with Disabilities Act and contained another provision which effectively increased the salary of members of the General Assembly. The plaintiffs, taxpayers and citizens, brought suit, claiming the act was unconstitutional because it violated the single subject provision and raised the salary of sitting legislators. The only injury alleged by the plaintiffs was their injury as taxpayers for misuse of their funds. The court stated that the party challenging the law must "show adequate injury or the immediate danger of sustaining some injury." *Id.* at 488.

In that case, the court held that the plaintiffs did not demonstrate any interest beyond that of the general public. This was insufficient to confer standing upon them to challenge the law. The court emphasized that a plaintiff must show some direct injury has or will be sustained. "[I]t is not sufficient that he has merely a general interest common to all members of the public." *Id.* at 488. That a particular law is invalid "is almost never a sufficient rationale for judicial intervention." *Id.*

Here, Plaintiffs' injury from this alleged violation is the same general injury suffered by the public as a whole. Under *Pence*, this is insufficient to confer standing on a party. Plaintiffs have alleged no actual specific harm. Accordingly, Plaintiffs lack standing to pursue this claim as well.

Affirmed.

BAKER, J., and RILEY, J., concur.