**CITY OF VINCENNES,**
Appellant–Plaintiff,

v.

**Kevin EMMONS, d/b/a Cherokee Rentals, Jeffrey Hendrixson, Eric Klein,**
Appellee–Defendants.

No. 42A02–0402–CV–193.

Court of Appeals of Indiana.

Nov. 10, 2004.

J. David Roellgen, Emmison, Doolittle, Kolb & Roellgen, Vincennes, IN, Attorney for Appellant.

Paul B. Ledford, P.C., Vincennes, IN, Attorney for Appellee.

Andrew C. Charnstrom, Maureen E. Ward, Wooden & McLaughlin, LLP, Michael J. Lewinski, Hilary G. Buttrick, Ice Miller, Indianapolis, IN, Attorneys for Amici Curiae.

### OPINION

ROBB, Judge.

The City of Vincennes (the "City") appeals from the trial court's order finding the Vincennes Rental Housing Code (the "housing code") unconstitutional in an action by the City against landlords Kevin Emmons, doing business as Cherokee Rentals, Eric Klein, and Jeffrey Hendrixson[1] (the "Landlords") for failure to pay landlord registration fees in violation of the housing code. We affirm.

### Issues

The City raises several issues for our review, which we restate as follows:

1. Whether the Landlords have standing to challenge the constitutionality of the housing code;

2. Whether the inspection provision of the housing code is unconstitutional; and

3. If the inspection provision is unconstitutional, whether it can be severed from the remainder of the housing code.

### Facts and Procedural History

Section 156 of the City's Code of Ordinances concerns rental housing. In relevant part, it states:

### § 156.03 COMPLIANCE REQUIRED; APPLICATION OF SUBCHAPTER.

(A) No person shall occupy or maintain a rental unit within the city unless in accordance with the provisions of this subchapter.

* * *

### § 156.04 REGISTRATION OF RENTAL UNITS REQUIRED.

(A) No owner of real estate within the city shall use real estate for the purpose of erecting or maintaining a rental unit thereon without annually registering with the Rental Housing Officer....

* * *

(E) The annual registration form shall be accompanied by an annual fee equal to $18 per rental unit payable to the city.

* * *

(F) It shall be a violation of this subchapter for any owner to maintain a rental unit which has not been registered in accordance with this section.

(G) The annual registration fee shall be due on February 1 of each year.

### § 156.05 INSPECTION.

(A) Each rental unit and premises within the city shall be inspected by the Rental Housing Officer immediately prior to the expiration of its occupancy permit, to establish compliance with the Rental Housing Code. Occupancy permits shall be issued for a two-year period.

(B) No rental unit having an occupancy permit shall be inspected in good faith more often than once every two years, unless a request for inspection is made as provided in division (D) of this section.

(C) An occupancy permit shall be issued for each rental unit upon which a cycle inspection or a complete off-cycle inspection is performed after the effective date of the ordinance codified in this section, provided all violations cited on the inspection report, excluding exterior painting, are satisfactorily corrected and

[1] The case against Hendrixson was stayed due to his filing of a bankruptcy petition.

the unit reinspected within 60 days after such report is mailed to the owner or agent.

(D) Off-cycle inspection may be done at the discretion of the Rental Housing Officer, upon the written, signed request of any resident of the city, any governmental agency, or the rental unit's tenant, the tenant's legal representative, the owner, or the owner's agent. An off-cycle inspection shall be confined to the defects complained of, if any, by the person requesting the inspection unless the Rental Housing Officer determines that the condition of the rental unit or premises has deteriorated since the last cycle inspection to such an extent that a complete inspection is required to effectuate the purposes of the Rental Housing Code, in which case a complete new inspection of the entire rental unit and premises may be performed. If a complete off-cycle inspection is performed, a new occupancy permit shall be issued upon compliance, provided all violations excluding exterior painting are satisfactorily completed, and the unit reinspected, within 60 days after the receipt of the inspection report by the owner or owner's agent.

(E) Unless waived by the landlord or tenant, the following procedure shall be used to obtain entry to rental units for the purpose of inspection. The owner of the unit shall be contacted and a date shall be established for inspection. The owner shall then furnish to the Rental Housing Officer a current list of tenants in each rental unit. The Rental Housing Officer shall then send a certified letter with return receipt requested and a stamped self-addressed postcard to each tenant. If there is evidence that the tenant received the letter, but no other response is received from the tenant, consent to enter will be presumed. An official record shall be maintained of all notices. The landlord shall be responsible for granting access to the inspector upon presentation of a copy of the official record of notices and response. *If the tenant refuses entry for inspection* after proper notification, *the Rental Housing Officer shall not inspect without first obtaining a search warrant.*

§ 156.06 OCCUPANCY PERMITS.

(A) All rental units and premises inspected and found not to be in violation of the [housing code] shall be issued an occupancy permit by the Rental Housing Officer. Upon registration of a rental unit not previously registered, the Rental Housing Officer shall issue a temporary occupancy permit which shall be in effect until the unit has been inspected and either an occupancy permit has been issued or the temporary permit is revoked. . . .

* * *

(D) It shall be a violation of this subchapter for any owner to maintain a rental unit without an occupancy permit.

Addendum to Appellant's Brief at 4–7; Vincennes, Indiana Code of Ordinances §§ 156.03–156.06 (emphasis added).

The Landlords each owned real estate in the City which they operated as rental units. On July 3, 2000, the City filed an information for ordinance violation against each of the Landlords, alleging that they had failed to pay the annual landlord registration fee required by section 156.04 for multiple years in varying amounts.[2] Al-

---

**2.** Emmons allegedly failed to pay his landlord registration fees for the years 1997 through 2000 in the amount of $2,646.00; Klein allegedly failed to pay his fees for 1997 through 2000 in the amount of $1,440.00; and Hendrixson allegedly failed to pay his fees for 1996 through 2000 in the amount of

though filed under separate cause numbers, the cases were treated as consolidated in the trial court because the issues were identical, and remain consolidated on appeal. By agreement of the parties, the case was submitted to the court on the parties' briefs on the facts in issue. The Landlords filed their brief first and admitted that landlord registration fees were owed to the City pursuant to the housing code—although they disputed the amount—but contended that the housing code was unconstitutional due to the unreasonable search provisions. The City responded that the housing code was a valid exercise of the City's police powers; that the Landlords lacked standing to raise the issue of the constitutionality of the search provisions because the fee provision under which they were charged is separate; and that if the inspection provision is found unconstitutional, it can be severed from the remainder of the housing code. The trial court entered an order which reads as follows: "The Court finds the ordinance at issue is un-constitutional in its present form. The Court finds for the [Landlords] and this case is dismissed." Appellant's Appendix at 49. The City filed a motion to correct error, which was denied, and this appeal ensued.[3]

### Discussion and Decision

### I. Standard of Review

 When we review a constitutional challenge to a municipal ordinance, we consider the ordinance to stand on the same footing as a statute enacted by the legislature. *Lex, Inc. v. Bd. of Trustees of Town of Paragon,* 808 N.E.2d 104, 110 (Ind.Ct. App.2004), *trans. denied.* A municipal or-

dinance is cloaked with a presumption of constitutionality. *Id.* Therefore, we place the burden on appeal upon the party challenging it to show unconstitutionality. *Id.* Before an ordinance will be declared unconstitutional, its fatal defects must be clearly apparent. *Id.* at 110–11. An ordinance is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies. *Id.* at 111.

### II. Standing

The City first contends that the Landlords have no standing to raise the constitutionality of the inspection provision of the ordinance.

 The issue of standing focuses on whether the complaining party is the proper one to invoke the court's power. *Alexander v. PSB Lending Corp.,* 800 N.E.2d 984, 989 (Ind.Ct.App.2003), *trans. denied.* The standing requirement assures that litigation will be actively and vigorously contested, as plaintiffs must demonstrate a personal stake in the litigation's outcome in addition to showing that they have sustained, or are in immediate danger of sustaining, a direct injury as a result of the defendant's conduct. *Id.* To establish standing, therefore, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and that the injury is a result of the defendant's conduct. *Id.* Moreover,

[a]lthough the Indiana constitution contains no "case or controversy" requirement, the federal limits on justiciability are instructive, because the standing re-

$3,240.00. Appellant's Appendix at 14, 58, 102.

3. Because of the constitutional nature of the issues raised herein, we invited the Indiana Association of Cities and Towns and the Apartment Association of Indiana to partici-

pate as amici curiae. The Indiana Association of Cities and Towns filed a brief substantively aligned with the City and the Apartment Association of Indiana filed a brief substantively aligned with the Landlords.

quirement under both federal and state constitutional law fulfills the same purpose: ensuring that the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *Schulz v. State*, 731 N.E.2d 1041, 1044 (Ind.Ct.App.2000), *trans. denied.* Under the federal test, to establish standing a plaintiff must allege a personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and is likely to be redressed by the requested relief. *Alexander*, 800 N.E.2d at 989.

■■■ The City contends that the Landlords do not have standing because any injury to them is only speculative. We disagree. Before a landlord can rent property, he must have an occupancy permit, which expires after two years. And before he can get an initial occupancy permit or renew an expiring one, the City must conduct an inspection. The inspection concerns the structural and mechanical aspects of the rental unit. The landlord is responsible for correcting any violation discovered during the inspection and may be subject to a one hundred dollar fine for every day the violation continues. Every two years, rental units are subject to a mandatory inspection, and it is clearly the Landlords' interests which are implicated in the inspection; they therefore have standing to raise the constitutionality of the ordinance.

### III. Constitutionality of the Ordinance

The Landlords contend that the search provisions of the ordinance are unconstitutional because they provide for administrative searches of the Landlords' property without their consent or, in the absence of the Landlords' consent, a warrant.

### A. Fourth Amendment

■■■ The basic purpose of the Fourth Amendment, applicable to the states through the Fourteenth Amendment, is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). "[E]xcept in carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* at 528–29, 87 S.Ct. 1727.

In *Camara*, the Supreme Court considered a municipal ordinance which required the owner of an apartment building to permit an inspection of the building. The owner refused, arguing that the ordinance which gave city officials the right to enter violated the Fourth and Fourteenth Amendments because it did not require a search warrant or probable cause to believe that a violation of the city's housing code existed. The Supreme Court held that "administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment [and] such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual. . . ." *Id.* at 534, 87 S.Ct. 1727.

However, due to the nature of the municipal programs under consideration, which have as their purpose the prevention of even unintentional conditions hazardous to public health and safety by securing and enforcing compliance with minimum standards for private property, the Supreme Court then considered the kind of warrant procedure required for code enforcement inspections. Concluding that such inspections are reasonable searches of private property under the Fourth Amendment, the Court held that "probable cause" to issue an administrative search warrant exists if reasonable legislative or administrative standards exist for conducting the in-

spection. *Id.* at 538, 87 S.Ct. 1727. The standards could be based upon the passage of time, the nature of the building to be inspected, or the condition of the surrounding area, and do not have to be based upon specific knowledge of the particular property. *Id.*

Subsequent cases addressing this issue have noted that the "consent" which would obviate the need for a warrant must be voluntary and cannot be explicitly or implicitly required. *See Makula v. Village of Schiller Park, IL,* 1998 WL 246043 at *7 (N.D.Ill., Apr. 30, 1998) (holding that sections of ordinance governing multi-family dwellings which stated that the Village may require "irrevocable consent by the owner" as a condition of obtaining a license and which require an owner to agree to an administrative search in order to have a license issued or renewed were unconstitutional under the Fourth Amendment for not meeting the standards for voluntariness); *Sokolov v. Village of Freeport,* 52 N.Y.2d 341, 438 N.Y.S.2d 257, 420 N.E.2d 55, 57 (1981) (stating that "[i]t is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution."); *Currier v. City of Pasadena,* 48 Cal.App.3d 810, 121 Cal.Rptr. 913, 916

(1975), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 432, 46 L.Ed.2d 375 (1975) ("To compel a property owner to let his property lie vacant and to prohibit him from selling it, unless he 'consents' to a warrantless search is to require an involuntary consent. The owner's basic right to use and enjoy the fruits of his property cannot be conditioned on his waiving his constitutional rights under the Fourth Amendment....").

■ The housing code at issue herein does not expressly state that the Landlords' consent to an inspection is a required condition of being granted an occupancy permit; however, neither does it include a warrant procedure in the absence of the Landlords' consent. The housing code only provides a warrant procedure if the *tenant* refuses to consent to the search. The housing code thus implies that the Landlord has consented to an inspection merely by applying for an occupancy permit and has no right to refuse. In order to satisfy the requirements of *Camara* and thus pass muster under the Fourth Amendment, the housing code must give the Landlords the option to consent and include a warrant procedure to be followed in the event the Landlords refuse to consent to a search.[4] It does not, and it is therefore unconstitutional on its face.[5]

4. The City's Rental Housing Officer states by affidavit that "in the event consent is not given it is the policy and practice of the [City] to obtain a warrant." Addendum to Amicus Curiae Brief on Behalf of the Indiana Association of Cities and Towns at 2. However, he also states that he has never conducted an inspection without the consent of the tenant or landlord and has not had occasion to seek a warrant. *Id.* Even if the "policy and practice" of the City had any legal force and effect, it has never been tested and therefore, there is no "policy and practice" of the City in this regard other than as set forth in the housing code itself, and the housing code as

written unconstitutionally fails to require such a warrant.

5. We do note, however, that pursuant to *Camara,* the regular two-year inspections provided for in the housing code would be supported by "probable cause" based on the passage of time and a warrant should be issued as a matter of course when requested as based upon a reasonable standard. The off-cycle inspections, however, would require independent probable cause for the issuance of a warrant. As the off-cycle inspections are triggered by specific complaints, the need for and reasonableness of such off-cycle inspec-

## B. Severability

Having determined that the inspection provision of the ordinance is unconstitutional on its face for failing to include a warrant procedure if the Landlords should refuse to consent to a search, we also must address the constitutionality of the ordinance as a whole.

 An ordinance is presumed valid. *Chemical Waste Mgmt. of Indiana, L.L.C. v. City of New Haven,* 755 N.E.2d 624, 633 (Ind.Ct.App.2001). Rules relating to statutory construction are also applied in construing ordinances. *Hopkins v. Tipton County Health Dept.,* 769 N.E.2d 604, 608 (Ind.Ct.App.2002). If one section of an ordinance can be separated from the other sections and upheld as valid, it is our duty to do so. *Id.* at 608–09. Where the invalid portion "is distinctly separable from the remainder and the remainder is in itself complete, sensible, and capable of execution, the invalid portion may be rejected and the remainder permitted to stand as valid." *Chemical Waste Mgmt.,* 755 N.E.2d at 633 (quoting *Hobble ex rel. Hobble v. Basham,* 575 N.E.2d 693, 699 (Ind.Ct.App.1991)). However, where the invalid provisions of an ordinance are not distinct and separable from the other sections of the ordinance, the entire ordinance is void. *Id.*

 The housing code as a whole provides that "no person shall occupy or maintain a rental unit within the city unless in accordance" with its provisions. Addendum to Appellant's Brief at 4 (Vincennes, Indiana Code of Ordinances § 156.03(A)). It is a violation of the ordinance to maintain a rental unit without an occupancy permit. *Id.* at 7 (Vincennes, Indiana Code of Ordinances § 156.06(D)). An occupancy permit is issued after the premises are inspected and found not to be in violation of the Rental Housing Code. *Id.* (Vincennes, Indiana Code of Ordinances § 156.06(A)). Because the ability to maintain a rental unit pursuant to the housing code is ultimately tied to the inspection of the unit, the constitutionally invalid provision of the housing code is not distinct and separable from the remainder of the housing code, and the trial court did not err in declaring the housing code as a whole unconstitutional.

## Conclusion

The Landlords, whose interests are at issue, do have standing to raise the constitutionality of the housing code. Because the housing code fails to provide a warrant procedure when landlords refuse to give consent to an inspection, that provision of the housing code is unconstitutional on its face, and because the inspection provision is not "distinctly separable" from the remainder of the housing code, the trial court did not err in declaring the housing code as a whole unconstitutional. The trial court's order is therefore affirmed.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.

tions can be determined from the complaint itself.