**LOCK HAVEN PROPERTY OWNERS'
ASSOCIATION, et al., Plaintiffs**

v.

**CITY OF LOCK HAVEN,
et al., Defendants.**

**Civil No. 3:CV–83–458.**

United States District Court,
M.D. Pennsylvania.

Dec. 29, 1995.

Edward J. Van Allen, State College, PA, for plaintiff.

Wesley J. Rish, Snowiss Steinberg & Faulkner, Lock Haven, PA, for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This action was initiated by the plaintiff, the Lock Haven Property Owners' Association and on behalf of all other Lock Haven property owners subject to registration of rental units, on September 15, 1995 to enforce a Consent Decree entered by this court on February 1, 1985. The plaintiffs allege that the defendants have adopted a rental unit registration ordinance, Ordinance Number 442, which not only violates the Consent Decree but is also unconstitutional. On October 16, 1995, the defendants filed a motion in opposition to the plaintiff's motion. Plaintiffs submitted a reply brief on October 27, 1995.

A conference between the parties and the court was held in chambers on November 3, 1995. At that conference, the court requested that the parties file supplementary brief confined to the specific issue of the constitutionality of the new Lock Haven ordinance. Plaintiffs and defendants submitted their briefs on November 14, 1995. The court will now address the issue of the constitutionality of Lock Haven Ordinance Number 442.[1]

### FACTS

On June 21, 1993, the defendants enacted Lock Haven Ordinance Number 442. The Ordinance provides, in relevant part:

*Section 3. Prohibition of Occupancy.* No residential unit shall be occupied by other than the owner thereof unless there is displayed at the structure in which the unit is located a Certificate of Inspection as required by the provisions of this Ordinance.

*Section 4. Inspection Requirements.* Residential units occupied or to be occupied by other than the owner thereof shall be subject to inspection in accordance with the provisions of this Ordinance.

a. *Purpose.* Inspections required by this Ordinance shall be for the purpose of determining compliance with the provisions of the Code as in effect in the City on the date of inspection.

---

1. This memorandum will not address whether Lock Haven Ordinance No. 442 violates the February 1, 1985 Consent Decree. That issue will be decided at a later date.

b. *Permitted Inspectors.* Inspections required by this Ordinance shall be conducted only by individuals or agencies certified as an inspector by BOCA [Building Officials and Code Administrators International, Inc.] as to the type of premises to be inspected. No employee of the City shall be permitted to conduct such inspections. Any individual or agency desiring to conduct inspections required by this Ordinance shall provide proof of current certification to the City.

c. *Timing of Inspections.*

(i) As for any residential unit unoccupied or occupied by the owner on or after the effective date hereof, a Certificate of Inspection shall be issued and displayed prior to occupancy of such residential unit by anyone other than the owner and subsequent inspections shall occur as set forth in subparagraph (c)(ii).

(ii) As for any residential unit occupied by other than the owner as of the effective date hereof and for all subsequent inspections, inspections required by this Ordinance shall be completed and the Certificate of Inspection issued and displayed not later than December 31 of the year for which inspection is required. In no event shall such an inspection be conducted prior to January 1 of the year for which the inspection is required. The City shall be divided into districts as follows:

1. District I—First, Second and Fifth Wards of the City.

2. District II—Third Ward of the City.

3. District III—Fourth Ward of the City. Residential Units subject to the inspection requirements of this Ordinance and located in District I shall be inspected during the calendar year in which the Ordinance shall become effective and every third year thereafter. Residential Units subject to the inspection requirements of this Ordinance and located in District II shall be inspected during the first calendar year subsequent to the year in which this Ordinance becomes effective and every third year thereafter. Residential Units subject to the inspection requirements of this Ordinance and located in District III shall be inspected during the second calendar year subsequent to the year in which this Ordinance becomes effective and every third year thereafter.

d. *Exceptions.*

(i) Any residential unit occupied or to be occupied by other than the owner thereof shall be excepted from the inspection requirements of this Ordinance upon proof submitted to the Inspection Compliance Official that such unit is subject to a requirement by other governmental agency of safety inspection similar to inspection under Section 4(a) hereof at least once every three years and in compliance with such inspection requirements.

(ii) No residential unit which would otherwise be subject to the inspection requirements of this Ordinance shall be required to be inspected within the three (3) calendar years subsequent to the year in which any certificate of occupancy required before occupancy of new construction is issued.

(iii) When a Certificate of Inspection has been issued prior to a residential unit being occupied by other than the owner, said residential unit shall not be subject to reinspection under the terms of this Ordinance prior to the first applicable calendar year occurring after the calendar year subsequent to issuance of the initial Certificate of Inspection.

*Section 5. Issuance and Display of Certificate of Compliance.*

a. *General Provision.* Upon submission of proof that an inspection required by this Ordinance has been completed and that there were no violations found of the Code as in effect on the date of inspection or that any such violations have been corrected in accordance with said Code, the Inspection Compliance Officer shall issue a Certificate of Inspection for the structure with each residential unit therein which was inspected listed upon said Certificate. The Certificate of Inspection shall be displayed in plain view within the unit or structure ...

*Section 7. Responsible Party.* The Owner of any residential unit which is subject to the inspection requirements of this Ordinance shall be responsible for compliance with the provisions of this Ordinance.

*Section 8. Penalties.* The Owner of any residential unit who has violated or permitted the violation of this Ordinance shall upon conviction thereof be sentenced to pay a fine of $600.00 and costs of prosecution with imprisonment, not exceeding ninety (90) days, if the fine and costs are not paid. Each violation of this Ordinance and each day the same is continued shall be deemed a separate offense.

*Section 9. Fee Schedule.* The fee schedule for issuance for Certificates of Inspection shall be as follows:

a. Upon change from owner occupied or unoccupied to occupied by other than owner; $5.00

b. Inspections required by Section 4(c)(ii) of this Ordinance:

(i) From January 1 to June 30 of the year during which inspection is required; no charge

(ii) After June 30 of the year during which inspection is required; $5.00.

*Section 10. Repealer.* All ordinances or parts of ordinances which are inconsistent herewith are hereby repealed.

*Section 11. Severability.* If any sentence, clause, section or part of this Ordinance is for any reason found to be unconstitutional, illegal, or invalid, such unconstitutionality, illegality, or invalidity shall not affect or impair any of the remaining provisions, sentences, clauses, sections or parts of this Ordinance. It is hereby declared as the intent of the Council of the City that this Ordinance would have been adopted had such unconstitutional, illegal, or invalid sentence, clause, section, or part thereof not been included therein.

The record before the court does not reflect that there has been any attempt by Lock Haven officials to enforce the Ordinance.

## ANALYSIS

The property owners assert that Ordinance 442 is unconstitutional for several reasons. These are: (1) Lock Haven Ordinance Number 442 is violative of the Fourth Amendment because it permits warrantless searches; (2) Ordinance 442 runs afoul of the Equal Protection Clause of the Fourteenth Amendment through its unlawful classification of owners and renters of non-owner occupied housing; (3) it violates the Dormant Commerce Clause by unfairly burdening out-of-state economic interests; (4) it deprives the plaintiffs of substantive due process because it was deliberately and arbitrarily passed to infringe on the plaintiffs' rights and circumvent the February 1, 1985 Consent Decree; and, (5) Ordinance No. 442 is void for vagueness because "residential unit" is not clearly defined, the enforcement provisions of the Ordinance are not explicitly stated and rules relating to pre-occupancy inspections are confusing.

■ At the outset, the court would note that the plaintiffs are not alleging that there has been any unconstitutional action by the City of Lock Haven, its agents or any of the named defendants. Indeed, it does not appear from the record that the defendants or their agents have taken any action to enforce Lock Haven Ordinance Number 442. Therefore, the plaintiffs are essentially arguing that the Ordinance is unconstitutional on its face. The standard of review for a facial challenge of Ordinance No. 442 imposes a "heavy burden" on the plaintiffs, because "[t]he fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid ..." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Indeed, the court may not find a statute such as Ordinance No. 442 to be facially unconstitutional unless every reasonable interpretation of the statute would be unconstitutional. *Salerno, supra,* at 745, 107 S.Ct. at 2100; *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796–97, 104 S.Ct. 2118, 2124–25, 80 L.Ed.2d 772 (1984). With this standard in mind, the court shall now analyze the property owners' assertions *seriatim.*

### (a) The Fourth Amendment Claim

■ Plaintiffs allege that since Ordinance No. 442 allows inspections without a warrant based upon probable cause issued by a judicial officer, the Ordinance violates the Fourth Amendment's prohibition of such searches as enunciated by the Supreme Court in *Camara*

*v. Municipal Court of the City and County of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The defendants argue that since city employees are not allowed to conduct the inspections and the Ordinance contains all the protections against unreasonable searches and seizures which a warrant provides, no Fourth Amendment search and seizure is involved.

In *Camara,* the appellant was criminally charged after refusing to allow San Francisco housing inspectors to conduct a warrantless inspection of his residence as authorized by the local housing code.[2] While awaiting trial, the appellant sued, alleging that the inspection ordinance was unconstitutional for failing to require a warrant for inspections. The state courts upheld the ordinance, based in part on *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), which had upheld the state court conviction of a homeowner who had refused to permit a municipal health inspector to enter and inspect his premises without a search warrant. Overruling *Frank,* the *Camara* Court found that the ordinance left "the occupant subject to the discretion of the official in the field … We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review …" *Camara, supra,* at 532–33, 87 S.Ct. at 1732–33. However, the Court noted that there is long-standing public and judicial support for inspections that promote the public welfare and are neither personal in nature nor aimed at the discovery of evidence of a crime. For these reasons, the Court found that a reduced standard of probable cause could justify the issuance of a warrant by a judicial officer for an inspection of a dwelling in the course of an otherwise valid area inspection. This standard was described as follows:

> Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that 'probable cause' to

issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling.

*Camara, supra,* at 538, 87 S.Ct. at 1735–36. The Court went on to state that in a governmental decision to search private property, "reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Id.* at 539, 87 S.Ct. at 1736. The Court noted that warrants for inspections "should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry." *Id.* at 539–40, 87 S.Ct. at 1736.

Several state courts have interpreted *Camara* as not applying in cases where the Ordinances do not implicate municipal employees, are made at the request of the landlord, do not involve a non-consensual intrusion, and satisfy the reasonableness test of a valid area inspection. In *Dome Realty Inc., et al. v. City of Paterson, et al.,* 83 N.J. 212, 416 A.2d 334 (1980), the New Jersey Supreme Court held that a Patterson ordinance contained all the necessary protection against unreasonable searches and seizures and, therefore, the Fourth Amendment did not apply. In that case, an inspection occurred only at the request of the landlord, the scope and timing of the inspection were known in advance, the housing inspector had no discretion regarding which buildings were to be searched, and there were no punitive consequences to a landlord who did not comply. In *Butcher v. City of Detroit,* 156 Mich.App. 165, 401 N.W.2d 260 (1986), the Court of Appeals of Michigan similarly held that all the protections from unreasonable searches and seizures required by the Fourth Amendment were provided by a Detroit ordinance mandating a consensual pre-sale inspection of all two-family dwellings. In that case, the

---

**2.** The relevant section of the Housing Code read: Sec. 503 Right to Enter Building. Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon

presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

inspection occurred just prior to the sale when the dwelling was vacant, the owner knew in advance of the timing and scope of the inspection, the inspector had no discretion as to which dwellings were to be searched, the inspection was not connected to a criminal investigation and the existence of violations had no punitive consequences for the landlord.

■ Ordinance Number 442 does contain one provision that could differentiate it from the ordinances in *Butcher* and *Dome Realty*. As noted, Section 8 of the Ordinance, entitled "Penalties" provides:

> The Owner of any residential unit who has violated or permitted the violation of this Ordinance shall upon conviction thereof be sentenced to pay a fine of $600.00 and costs of prosecution with imprisonment, not exceeding ninety (90) days, if the fine and costs are not paid. Each violation of this Ordinance and each day the same is continued shall be deemed a separate offense.

It does not appear that either the *Butcher* or *Dome Realty* ordinances contained a similar punitive provision. However, it is vital to note that the existence of an enforcement clause such as this does not in any way diminish the protections against unreasonable searches and seizures contained in Ordinance No. 442. Like the Patterson and Detroit ordinances, Lock Haven Ordinance 442 ensures that the landlord knows in advance the timing and scope of the inspection, the inspector has no discretion as to which dwellings are to be searched and the inspection is not connected to any criminal investigation. Lock Haven's Ordinance appears to provide more protection than the *Butcher* and *Dome Realty* ordinances inasmuch as the Ordinance 442 inspector cannot be a municipal employee and, indeed, could be the landlord himself if BOCA certified.[3] For these reasons, the court finds that Lock Haven Ordinance Number 442 provides all the safeguards of a warrant and, thus, makes pro-

curement of a warrant prior to a consensual search unnecessary.

**(b) The Equal Protection Claim**

■ The plaintiff argues that Lock Haven Ordinance Number 442 violates the Equal Protection Clause of the Fourteenth Amendment through its unlawful classification of owners and renters of non-owner occupied housing. In *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Supreme Court stated:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

*Id.* at 439–40, 105 S.Ct. at 3254 (citations omitted.) Only when a statute classifies through the use of impermissible factors, such as race, alienage, national origin or gender, or impinges on fundamental rights, is a heightened standard of review applied. *Id.* at 440, 105 S.Ct. at 3254. As Lock Haven Ordinance No. 442 does not involve any discernible fundamental interest and does not affect with particularity any protected class, the test is therefore whether it has a rational

---

**3.** The court would also note that Lock Haven Ordinance Number 442 does not require any landowner to submit to a search against his will. The only situation in which this inspection is necessary is when the owner chooses to rent his

property to others. For this reason, this situation may be more analogous to a business, e.g., a restaurant, being required to meet certain minimum requirements in order to be licensed by the state to serve the public.

**161**

relationship to a legitimate state interest. "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid." *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 1908–09, 52 L.Ed.2d 513 (1977) (citations omitted.)

Ordinance No. 442 was enacted in order to ensure the health, safety and welfare of the large number of Lock Haven's population who occupy rental units [4], a legitimate state interest. The classification drawn by the Ordinance is between owner-occupied and non-owner-occupied residences, which is rationally related to this stated purpose. Therefore, the court finds that Lock Haven Ordinance Number 442 does not violate the Equal Protection Clause of the Fourteenth Amendment.

**(c) Dormant Commerce Clause, Due Process Clause and "Void for Vagueness" Claims**

After careful consideration, the court finds that Lock Haven Ordinance Number 442 does not violate the dormant commerce clause or the due process clause and is not "void for vagueness".

## CONCLUSION

For reasons cited above, the court finds Lock Haven Ordinance Number 442 does not violate the United States Constitution.

---

4. The Ordinance states, in relevant part:
   WHEREAS, the City has experienced more problems with the maintenance of non-owner occupied properties than with owner occupied properties; and
   WHEREAS, a substantial portion of the housing stock within the City is not owner occupied; and
   WHEREAS, the health, safety, and welfare of occupants of rental units within the City would be enhanced by a system insuring compliance with the Code governing the maintenance of existing structures ...