ATTORNEY FOR APPELLANT
J. David Roellgen
Vincennes, Indiana

AMICUS CURIAE THE INDIANA
ASSOCIATION OF CITIES & TOWNS
Michael J. Lewinski
Hilary G. Buttrick
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Paul B. Ledford
Vincennes, Indiana

AMICUS CURIAE THE APARTMENT
ASSOCIATION OF INDIANA
Andrew C. Charnstrom
Maureen E. Ward
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 42S02-0504-CV-131

CITY OF VINCENNES,

Appellant (Plaintiff below),

v.

KEVIN EMMONS, D/B/A CHEROKEE
RENTALS, JEFFREY HENDRIXSON AND
ERIC KLEIN,

Appellees (Defendants below).

Appeal from the Knox Superior Court, Nos. 42D02-0006-OV-130;
42D02-0006-OV-135; and 42D02-0006-OV-132
The Honorable Robert L. Arthur, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 42A02-0402-CV-193

**January 25, 2006**

**Boehm, Justice.**

We hold that a city's housing code is not unenforceable for failure to include an express warrant procedure in the event a landlord objects to an inspection.

1

**Facts and Procedural History**

The City of Vincennes Rental Housing Code ("Code") sets standards for residential rental units and provides for regulation and inspection of units.[1]  Kevin Emmons, Jeffery Hendrixson, and Eric Klein each own one or more residential rental properties in Vincennes and failed to pay the required annual registration fee of $18 per unit.  The City brought civil actions against each of the landlords to collect unpaid registration fees.[2]  The cases were consolidated, and the consolidated case was submitted to the court on stipulated facts.  The landlords admitted that the Code called for payment of registration fees but contended that the entire Code was unconstitutional because its provision for inspection of rental units violated the Fourth Amendment to the United States Constitution as authorizing or requiring unreasonable searches.[3]  The trial court agreed and dismissed the City's complaint.

The Court of Appeals affirmed, holding (1) the landlords had standing to raise the constitutionality of the inspection provision of the Code; (2) the inspection provision of the Code violated the Fourth Amendment prohibition against unreasonable searches and seizures; and (3) the inspection provision was not severable, so the Code as a whole was unconstitutional.  City of Vincennes v. Emmons, 817 N.E.2d 291, 298 (Ind. Ct. App. 2004).  We granted transfer.  831 N.E.2d 742 (Ind. 2005).

---

[1] Section 156.04(A) of the Housing Code provides "No owner of real estate within the city shall use real estate for the purpose of erecting or maintaining a rental unit thereon without annually registering the property with the Rental Housing Officer."  15 Vincennes, Ind. Code of Ordinances § 156.04(A) (2003). Section 156.04(E) further provides that "The annual registration form shall be accompanied by an annual fee equal to $18 per rental unit payable to the city."  Id. § 156.04(E).

[2] The City alleges that Emmons failed to pay registration fees for the years 1997 through 2000 in the total amount of $2,646.00; Klein failed to pay $1,440.00 for 1997 through 2000; and Hendrixson failed to pay $3,240.00 for 1996 through 2000.

[3] On transfer, the amicus, Apartment Association of Indiana, contends that the inspection provision also violates Article I, Section 11 of the Indiana Constitution.  The Association alleges that the landlords own the premises, are responsible for repair and maintenance of common areas, and are subject to fines for code violations.  They argue that these alleged facts plus the inspection provision's failure to include an express warrant procedure in the event a landlord objects to an inspection makes the provision unconstitutional under Article I, Section 11.  This claim was not presented to the Court of Appeals and is not supported by Indiana authority.  For both reasons, we do not address it.

The Code contemplates three types of inspection. It calls for an initial inspection as a condition of a two-year occupancy permit when a unit[4] is first put on the rental market and mandatory "cycle" inspections every two years thereafter. The Code also authorizes "off-cycle" inspections at the discretion of the Rental Housing Officer upon the written request of any resident of the city or any government agency, the tenant, or the landlord. 15 Vincennes, Ind. Code of Ordinances § 156.05 (A, C, D). An off-cycle inspection is limited to inspection of "the defects complained of . . . unless the Rental Housing Officer determines that the condition of the rental unit or premises has deteriorated since the last cycle inspection to such an extent that a complete inspection is required . . . ." Id.

For all three types of inspection, the Code provides that both the tenant and landlord are to receive notice of the planned inspection. In the event a tenant objects to the proposed inspection, the Code provides that the City may not inspect without a search warrant. It requires the landlord to furnish a list of tenants and to be "responsible for granting access" after consent of the tenants is obtained, but it does not require the landlord's consent and does not provide a procedure for obtaining a warrant in the event a landlord objects to an inspection.[5] The landlords argue, and the Court of Appeals agreed, that in order to satisfy the Fourth Amendment the Housing Code must give landlords the right to refuse consent and must include a warrant procedure to be followed in the event a landlord refuses to consent to a search.

---

[4] The Code defines a "rental unit" as "A rented dwelling unit or rooming unit." 15 Vincennes, Ind. Code of Ordinances § 156.01. A "rental dwelling unit" is defined as "A dwelling unit in a residential premises covered by a tenancy agreement." Id. A "rooming unit" is defined as "Any room or group of rooms forming a single habitable unit used or intended to be used for living and sleeping, but not for cooking or eating purposes." Id.

[5] Section 156.05(E) of the Housing Code provides:

> Unless waived by the landlord or tenant, the following procedure shall be used to obtain entry to rental units for the purpose of inspection. The owner of the unit shall be contacted and a date shall be established for inspection. The owner shall then furnish to the Rental Housing Officer a current list of tenants in each rental unit. The Rental Housing Officer shall then send a certified letter with return receipt requested and a stamped self-addressed postcard to each tenant. If there is evidence that the tenant received the letter, but no other response is received from the tenant, consent to enter will be presumed. An official record shall be maintained of all notices. The landlord shall be responsible for granting access to the inspector upon presentation of a copy of the official record of notices and responses. If the tenant refuses entry for inspection after proper notification, the Rental Housing Officer shall not inspect without first obtaining a search warrant.

15 Vincennes, Ind. Code of Ordinances § 156.05(E).

**Constitutionality of Inspections Without Landlord Consent**

The landlords contend that section 156.05(E) of the City's Housing Code is unconstitutional because it fails to require a warrant if a landlord does not consent to an administrative search of the landlord's property. The City initially contends that the landlords have not been subjected to any search without consent, and therefore they have no standing to raise the claim that the ordinance is unlawful for lack of a warrant provision. The landlords respond that they are subjected to risk of penalties under this ordinance for refusing to comply with unconstitutional searches and therefore have standing. We think this argument presents a good example of the point that issues of standing and search and seizure under the Fourth Amendment "merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner." Rawlings v. Kentucky, 448 U.S. 98, 106 (1980). If the ordinance under which the registration fees were assessed violates the Fourth Amendment on its face and the offending provision is not severable, then the ordinance is not enforceable and constitutes a defense to the City's collection claim. We therefore agree that the landlords have standing to raise this contention, but disagree that the claim has merit.

The landlords cite decisions from several jurisdictions that have held or suggested that a housing code inspection provision is facially unconstitutional if it does not by its express language require inspectors to seek a warrant to conduct a nonconsensual search of the landlord's residential rental property.[6] Other jurisdictions have reached the opposite result.[7] The authori-

---

[6] See, e.g., Makula v. Vill. of Schiller Park, 1998 U.S. Dist. LEXIS 7173, at *23-24 (N.D. Ill. Apr. 30, 1998) (upholding an ordinance provision because it permitted owners and tenants to refuse warrantless entries and incorporated a warrant procedure in the event a tenant or landlord refused consent); Tobin v. City of Peoria, 939 F. Supp. 628, 633 (C.D. Ill. 1996) (reading an inspection ordinance to incorporate a warrant requirement in order to avoid finding the ordinance facially unconstitutional); Hometown Cooperative Apartments v. City of Hometown, 515 F. Supp. 502, 504 (N.D. Ill. 1981) ( stating that city had remedied fatal flaw in its earlier point of sale inspection ordinance by providing a warrant procedure in cases in which a new owner or lessee of property refuses consent to an inspection); Currier v. City of Pasadena, 121 Cal. Rptr. 913, 915-16 (Cal. Ct. App. 1978) (applying the principles set forth in Camara v. Mum. Court of City & County of San Francisco, 387 U.S. 523 (1967), the court stated that an ordinance would have been unconstitutional under the Fourth Amendment but for the fact that it was subject to the provisions of the code of civil procedure in that state requiring a warrant for inspections absent voluntary consent); Sokolov v. Vill. of Freeport, 420 N.E.2d 55, 59 (N.Y. 1981) (reinstating the trial court's declaratory judgment that the village's rental permit ordinance was unconstitutional for authorizing warrantless inspection of residential rental property).

[7] Courts finding no constitutional violation have suggested that no warrant is required at least in part because of the diminished nature of the landlord's privacy interest in an apartment he is making available

ties finding constitutional flaws in housing ordinances calling for warrantless inspection all find their roots in Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523 (1967). The Supreme Court there held that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Id. at 528-29. In Camara, a tenant-lessee was prosecuted for refusing to submit to a warrantless search of his rental unit by a housing code inspector.[8] The tenant's conviction was reversed because a warrantless search of the tenant's dwelling without consent of the tenant was held to violate the Fourth Amendment. Id. at 540. In See v. City of Seattle, 387 U.S. 541, 545-46 (1967), a companion case to Camara, the Supreme Court held that the Fourth Amendment also bars prosecution of an occupant of commercial property who refuses to permit a warrantless code-enforcement inspection.[9] For the reason given below, we do not believe either Camara or See supports the landlords' claim.

---

for rent. See, e.g., Lock Haven Prop. Owners' Sass's v. City of Lock Haven, 911 F. Supp. 155, 160 (M.D. Pa. 1995) (The court concluded that the safeguards provided by a warrant are meaningless in this context because the inspection process itself effectively provides assurances and safeguards against arbitrary government action. Housing inspectors have limited discretion regarding which structures are to be searched, both the scope and timing of the inspection are known to the owner in advance, and the inspection has no connection with criminal investigation.); Butcher v. City of Detroit, 401 N.W.2d 260, 264 (Mich. Ct. App. 1986) ("Many inspections will occur just prior to sale when the structures are vacant and the owner's expectations of privacy are relatively low."); Dome Realty v. City of Paterson, 416 A.2d 334, 350 (N.J. 1980) ("The landlord's expectation of privacy regarding one of his vacant properties would necessarily be attenuated.").

[8] The inspector was authorized to inspect under section 503 of San Francisco's housing code:

> RIGHT TO ENTER BUILDING. Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

Camara, 387 U.S. at 526. The tenant-lessee was prosecuted under section 507 of the housing code which provided that a violation of the code was a misdemeanor, punishable by a fine or imprisonment. Id. at 527 n.2.

[9] The fire inspector in See was authorized to inspect commercial property under a Seattle ordinance that mandated fire inspections "as often as may be necessary for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire, or any violations of the provisions of this Title, and of any other ordinance concerning fire hazards." See, 387 U.S. at 541. The defendant was convicted under a provision of the Seattle fire code that made violation of the fire code punishable by fine or imprisonment. Id. at 542 n.1. Since Camara and See were decided, the Supreme Court has also carved out an exception to the warrant requirement for administrative searches of commercial premises within certain "highly regulated" industries. The Court has deemed liquor, firearms, strip mining, and automobile junkyards "heavily regulated industries" and held that warrants are not required to conduct administrative searches of commercial premises in those industries. See New York v. Burger, 482 U.S. 691, 703 (1987) (auto-

First, as explained below, in many, if not most inspections, unlike the tenant, the landlord has no constitutional claim of any sort. Accordingly, the landlords' facial attack fails under the general doctrine that a statute or ordinance is not unconstitutional simply because it might be administered in an unconstitutional manner under some circumstances. Operation Badlaw, Inc. v. Licking County Gen. Health Dist. Bd. of Health, 866 F. Supp. 1059, 1065 (S.D. Ohio 1992) ("A facially constitutional regulation does not become unconstitutional because it might be applied unconstitutionally."); Hometown Co-operative Apartments, 515 F. Supp. at 504 (plaintiff's "speculation and conjecture" as to future possibility that city would in bad faith "refuse to seek a warrant" or would "be unable to procure one" such that city would "force a property owner or tenant to consent to a warrantless search" was insufficient to invalidate an otherwise facially valid inspection ordinance); Tobe v. City of Santa Ana, 892 P.2d 1145, 1152 (Cal. 1995) ("To support a determination of facial unconstitutionality, voiding [a] statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . ." (emphasis in original)).

In order for the landlords to establish a Fourth Amendment violation they must show that the governmental action unreasonably invades their legitimate privacy interest. See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The landlords' claim fails this threshold test. A legitimate expectation of privacy involves two components: "1) did the person exhibit an actual expectation of privacy; and 2) does society recognize that expectation as reasonable?" Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994) (citing Katz, 389 U.S. at 361). Fourth Amendment rights are personal and may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Accordingly, the tenants' well established right to be free of warrantless inspection does not confer any rights on the landlords.

Both Camara and See addressed the Fourth Amendment rights of the occupant of leased property. The rental unit is the tenant's home, and the tenant clearly has an important interest in not having the inspector observe "conditions and events wholly unconnected with building viola-

---

mobile junkyards); Donovan v. Dewey, 452 U.S. 594, 602 (1981) (strip mining); United States v. Boswell, 406 U.S. 311, 317 (1972) (firearms); Colonnade Catering Corp. v. United States, 397 U.S. 72, 76-77 (1970) (liquor). Although tenants of either residential or commercial space are plainly entitled to Fourth Amendment protection, we think it likely the landlords' claims are subject to the regulated industry exception. We need not resolve that issue because we conclude that the landlords have no substantial protectable interest at stake.

tions, but nevertheless embarrassing" or intrusive to the tenant. 5 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.1(g) at 34 (West 2004) (quoting Comment, 65 Colum. L. Rev. 288, 292 (1965)). The tenant also has a legitimate interest in "not having personal and family activities unnecessarily interrupted." LaFave, supra, § 10.1(g) at 34. For these reasons, as Camara held, a warrantless search without the tenant's consent is unconstitutional. See makes clear that occupants of commercial property also have cognizable Fourth Amendment interests: "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." 387 U.S. at 543. However, the status of residential and commercial tenants for these purposes is not identical. Occupants of commercial property have a lesser expectation of privacy in their property than that of individuals in their homes. See, e.g., New York v. Burger, 482 U.S. at 700 ("An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home."); Donovan v. Dewey, 452 U.S. at 598-99 ("The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home . . . .").

Landlords do not themselves occupy the rental units as either personal residences or as commercial space. Their interests are therefore substantially further down the scale of protected interests than either the residential or commercial tenant, and in most circumstances fall off the scale altogether. First, by leasing the property, the landlord has abandoned any expectation of privacy in the leased space and common areas because the tenant has full access to them. Second, to the extent there are areas in the premises that are not accessible by tenants, the only property ordinarily on the premises belonging to the landlord is the premises itself, which is the subject of legitimate governmental interest. The landlords cite their concern that if a violation of the Code is found during an investigation, they are subject to civil fines and argue that this exposure to penalties implicates their "security interests." It is true that an inspection may reveal a violation but we disagree that this risk creates any Fourth Amendment claim. The discovery of a Code violation during the course of a housing code inspection compromises no legitimate privacy interest. As the Supreme Court of the United States recently held in upholding a dog sniff search for drugs, "any interest in possessing contraband cannot be deemed legitimate, and thus, governmental conduct that *only* reveals the possession of contraband compromises no legitimate

7

privacy interest." <u>Illinois v. Caballes</u>, 125 S. Ct. 834, 837 (2005) (emphasis in original) (internal quotations omitted). Just as there is no right to possess contraband, the landlords have no right to operate residential rental units in violation of housing code standards. "The expectation that certain facts will not come to the attention of authorities" is not a privacy interest that society considers reasonable. <u>Id.</u> at 837-38. (internal quotations omitted). If the only thing a landlord has to fear from a housing code inspection is discovery of code violations, the landlord has no cognizable privacy interest in keeping violations hidden from authorities.

To the extent that the landlord's privacy interest is implicated at all by the City's Housing Code, it is only where the landlord may occupy a unit or keep personal effects in an unoccupied area. The landlord may also occupy and control some service areas in a residential complex. Except in these limited situations, unlike the tenant, the landlord suffers no threat from a housing inspection of accidental or incidental invasion of privacy as to unrelated matters. Indeed, the landlords in this case do not claim that they have anything in the complex except the property itself, and do not claim to occupy any units.

Where the landlord is also the occupant, either by living in a unit or keeping property on the premises, we would read the inspection provision of the Code to require a warrant if a landlord objects to an inspection. It is a familiar canon of statutory interpretation that statutes should be interpreted so as to avoid constitutional issues. <u>Gomez v. United States</u>, 490 U.S. 858, 864 (1989); <u>See also</u> <u>Tobin</u>, 939 F. Supp. at 633-34 (holding that an inspection ordinance could be read as incorporating a warrant requirement into the inspection procedure so as to defeat the claim that the inspection ordinance was unconstitutional on its face). The Code requires inspectors to obtain the consent of a tenant to an inspection and requires a warrant in the event the tenant refuses consent. The Code also requires landlords to grant the inspector access to the building after the consent of the tenants is obtained. Thus, the Code assumes that units subject to inspection will be occupied by tenant-lessees, not landlord-owners. The drafters of the Code apparently did not explicitly consider the circumstance where the owner of an apartment unit is also an occupant of the rental premises either by making it his own home or by leaving property there. In either case, we would consider the landlord to be also the "tenant" and would apply the warrant procedure to the landlord itself. So construed, the ordinance is in conformity with the Fourth Amendment. Accordingly, we find no constitutional defect in the City's housing code.

8

There is another flaw in the landlords' claim. Local legislation is not constitutionally infirm because it does not explicitly provide for all constitutional guarantees and rights that might be implicated by its terms. In a given case, background constitutional law dictates whether some protections will be required in the enforcement of a local law. See, e.g., United States v. Cernobyl, 255 F.3d 1215, 1219 (10th Cir. 2001); United States v. Brough, 243 F.3d 1078, 1079 (7th Cir. 2001) (penalty provision in federal drug statute was not facially unconstitutional merely because it was silent concerning who makes findings and which party bears the burden of persuasion to meet requirements of jury findings under Apprendi v. New Jersey, 530 U.S. 466 (2000)); Coal. of N.J. Sportsmen v. Florio, 744 F. Supp. 602, 610 (D. N.J. 1990) (a state gun control law need not contain an express acknowledgement of the supremacy of federal law and preemptive legislation to withstand a challenge brought under the supremacy clause). For the reasons already given, in most inspections no warrant is required due to tenant consent. If in a particular case, for example where the landlord occupies the premises, the federal or state constitution requires the City to seek a warrant to conduct an inspection without landlord consent, the City will need a warrant whether or not section 156.05(E) addresses that explicitly. But the ordinance is not invalid for failure to spell that out.

## Conclusion

The judgment of the trial court dismissing the City's civil action is reversed.

Dickson, Sullivan, and Rucker, JJ. concur.
Shepard, C.J., concurs with separate opinion.

9

**Shepard, Chief Justice, concurring.**

We have been urged from time to time to impose a warranty of habitability on every Indiana residential lease as a matter of common law.

I think we have been wise to decline these invitations, believing that a housing market in which landlords and tenants are empowered to strike their own bargains as to quality and price of housing tends to produce a wider range of options, and that a market affected by judicial restriction of such bargaining likely produces less housing and raises prices for those in the lowest incomes. See Johnson v. Scandia Assoc., 717 N.E.2d 24, 30 (Ind. 1999).

My assessment of this question has partly rested on the knowledge that most Indiana renters (as this case shows, even those in many smaller cities) are protected by the enactment and enforcement of local housing codes.

Amicus for the state's apartment owners has asked us to prohibit regular inspection of rented housing. Indeed, they have urged us to hold that even when a tenant complains about a housing code violation (say, a fire safety threat), the city cannot investigate the threat without going to court for a warrant.

Of course, the Court has not embraced this position. Had we done so, the resultant bowdlerizing of local ordinances protecting renters would have suggested, to me at least, that the idea of recognizing a general implied warranty of habitability would bear revisiting.

1