


FILED

Sep 25 2023, 1:41 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 23S-CQ-108

## Indiana Right to Life Victory Fund and Sarkes Tarzian, Inc.,
*Plaintiffs-Appellants,*

–v–

## Diego Morales, et al.,
*Defendants-Appellees.*

Argued: September 7, 2023 | Decided: September 25, 2023

Certified Question from the
United States Court of Appeals for the Seventh Circuit
No. 22-1562

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents with separate opinion.

**Molter, Justice.**

Pursuant to Indiana Rule of Appellate Procedure 64, we exercised our discretion to accept the following certified question from the United States Court of Appeals for the Seventh Circuit: "Does the Indiana Code—in particular, §§ 3-9-2-3 to -6—prohibit or otherwise limit corporate contributions to [political action committees] or other entities that engage in independent campaign-related expenditures?" In short, our answer is: Yes.

# Facts and Procedural History

Plaintiff Indiana Right to Life Victory Fund is registered with the Indiana Election Division as a political action committee ("PAC") headquartered in Indianapolis, Indiana. It is organized as an independent-expenditure-only PAC, known as a "Super PAC." "Independent expenditure" is a term of art under federal law that refers to disbursements "for a communication expressly advocating the election or defeat of a clearly identified candidate *that is not made in cooperation, consultation, or concert with, or at the request or suggestion of*, a candidate, a candidate's authorized committee, or their agents, or a political party committee or its agents." 11 C.F.R. § 100.16 (emphasis added). As independent-expenditure-only PACs, Super PACs are barred under federal law from making contributions to candidates or their campaign committees. Richard Briffault, *Super PACs*, 96 Minn. L. Rev. 1644, 1647 (2012) (explaining that "a Super PAC can only make independent expenditures and is barred from making direct candidate contributions").

Plaintiff Sarkes Tarzian, Inc. is registered with the Indiana Secretary of State as a domestic for-profit corporation, with its principal office in Bloomington, Indiana. It wants to make a $10,000 contribution to the Victory Fund earmarked for the fund's independent expenditures, but it has not done so because it believes Indiana Code sections 3-9-2-4 and 3-9-2-5 prohibit corporate contributions to Super PACs like the Victory Fund.

The Victory Fund and Sarkes Tarzian filed a lawsuit in the U.S. District Court for the Southern District of Indiana against several state officials responsible for enforcing Indiana's election laws—the Secretary of State,

the Indiana Election Commission, the Indiana Election Division, the Indiana Attorney General, and Indiana county prosecutors. The plaintiffs requested a declaratory judgment that Indiana Code sections 3-9-2-4 and 3-9-2-5 are unconstitutional as applied to contributions like the $10,000 donation Sarkes Tarzian wishes to make to the Victory Fund. They argue these statutes run afoul of the United States Supreme Court's decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 365, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010), which held that the First Amendment forbids the government from restricting corporate contributions for independent expenditures. They also asked the district court to enjoin the election officials from enforcing the statutes to prohibit Sarkes Tarzian's proposed contribution and other contributions like it.

The district court dismissed the plaintiffs' suit for lack of standing. The court concluded the plaintiffs have not suffered an injury because the statutes at issue have never been enforced against corporate contributions for independent expenditures, and the election officials have disclaimed any intention to do so, both because they do not interpret the statutes as prohibiting the contributions, and because they agree with the plaintiffs that *Citizens United* precludes any such legislative restriction. *Ind. Right to Life Victory Fund v. Sullivan*, No. 1:21-cv-02796-SEB-TAB, 2022 WL 683645, at *7–8 (S.D. Ind. Mar. 8, 2022). The plaintiffs appealed, and the Seventh Circuit reasoned that it "cannot decide whether the Fund has standing to challenge the Indiana Election Code without first determining the Code's meaning," and that "inquiry entails its own complexity, as Indiana courts have not yet interpreted the provisions at issue." *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 627 (7th Cir. 2023). Mindful of important principles of federalism and the need for an authoritative answer to a potentially dispositive question, the Seventh Circuit certified the question to our Court under Seventh Circuit Rule 52, and we exercised our discretion to accept that certification under Indiana Appellate Rule 64.

## Discussion and Decision

The Seventh Circuit asks whether Indiana Code sections 3-9-2-3 to -6 prohibit corporate contributions to Super PACs like the Victory Fund. When we interpret a statute, we "give its words their plain meaning and

consider the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). As we do that, we are mindful of both what the statute says and what it does not say. *Id.*

Here, both sides agree that none of the relevant statutes say anything about corporate contributions to Super PACs for independent expenditures, but the parties disagree about what conclusion follows from that silence. The plaintiffs argue that silence means the contributions are prohibited, and the election officials argue that silence means the contributions are permitted. We agree with the plaintiffs that the plain, unambiguous meaning of the text is that the contributions are prohibited.

## I. Corporate contributions to PACs are limited to contributions that are statutorily authorized, which do not include contributions to Super PACs for independent expenditures.

Indiana used to ban all corporate political contributions. *See State v. Terre Haute Brewing Co.*, 186 Ind. 248, 115 N.E. 772, 772 (1917) ("No contributions, payments or favors of any kind shall be made, extended by or solicited from any private corporation to promote the success or defeat of any candidate for public office or of any political party or principle or for any other political purpose whatever." (quoting Act of Mar. 10, 1913, ch. 180, 1913 Ind. Acts 489, 494)). Now, the Indiana Code permits a corporation to "make a contribution to aid in the . . . election or defeat of a candidate," as well as the success or defeat of political parties and public questions, Ind. Code § 3-9-2-3(a), but only to the extent authorized by sections 4, 5, and 6 of Title 3 (Elections), Article 9 (Campaigns), Chapter 2 (Campaign Contributions), *id.* § -3(b) ("Contributions by a corporation or labor organization are limited to those authorized by sections 4, 5, and 6 of this chapter.").

"Contribution" is a statutorily defined term that turns on the donation's recipient and purpose. A donation to a candidate, a candidate committee, a regular party committee, *a political action committee*, or a legislative caucus committee "for the purpose of influencing . . . [the] election to office of a candidate" qualifies as a "contribution." *Id.* § 3-5-2-15(a).

"Political action committee" is also a statutorily defined term. It covers an organization which "accepts contributions or makes expenditures . . . to influence the election of a candidate" and which is not an auxiliary party organization, a legislative caucus committee, a regular party committee, or a candidate's committee. *Id.* § 3-5-2-37(a). A PAC's disbursement to influence a candidate's election is an "expenditure." *Id.* § 3-5-2-23(a).

Sarkes Tarzian's $10,000 donation would qualify as a contribution. Its recipient—the Victory Fund—is a PAC because the Victory Fund intends to receive contributions from donors like Sarkes Tarzian and then make expenditures to advocate for the election of political candidates who share Indiana Right to Life's views. *See* App. Vol. II at 54 (describing in the plaintiffs' complaint that the Victory Fund's sole purpose is to "receive, administer, and expend funds in connection with independent expenditures regarding candidates for Indiana offices"). And the purpose of Sarkes Tarzian's contribution is to support the Victory Fund in its efforts to elect candidates with aligned views.

Sarkes Tarzian's contribution would only be legal under Indiana law if it were authorized by sections 4, 5, and 6. I.C. § 3-9-2-3(b). Section 4 sets annual limits on corporations' direct contributions to candidates and party committees, with those limits ranging from $2,000 to $5,000 for an aggregate annual limit of $22,000:

> (1) an aggregate of five thousand dollars ($5,000) apportioned in any manner among all candidates for state offices (including a judge of the court of appeals whose retention in office is voted on by a district that does not include all of Indiana);

> (2) an aggregate of five thousand dollars ($5,000) apportioned in any manner among all state committees of political parties;

> (3) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for the senate of the general assembly;

(4) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for the house of representatives of the general assembly;

(5) an aggregate of two thousand dollars ($2,000) apportioned in any manner among regular party committees organized by a legislative caucus of the senate of the general assembly;

(6) an aggregate of two thousand dollars ($2,000) apportioned in any manner among regular party committees organized by a legislative caucus of the house of representatives of the general assembly;

(7) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for school board offices and local offices; and

(8) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all central committees other than state committees.

*Id.* § 3-9-2-4. Section 4 does not mention contributions to PACs.

But section 5 does. It says corporations like Sarkes Tarzian "may make a contribution to a political action committee" so long as the contribution (a) "is designated for disbursement to a specific candidate or committee listed under section 4 of this chapter," and (b) does not exceed section 4's dollar limits. *Id.* § 3-9-2-5(c). The contribution Sarkes Tarzian wants to make would violate section 5's requirement that Sarkes Tarzian earmark its contribution for a specific candidate or committee. Sarkes Tarzian wants to do just the opposite, earmarking its contribution for the Victory Fund's independent expenditures. Indeed, a key organizing principle of the independent-expenditure-only PAC is that it will not disburse its funds to candidates and party committees. *See* App. Vol. II at 61 (directing in the Victory Fund's board resolution that the "Victory Fund is prohibited from making contributions to any candidate or any political party").

Section 6 provides exceptions to these restrictions. It says sections 4 and 5 do not apply to certain nonpartisan registration and get-out-the-vote campaigns, to transfers from incorporated nonpartisan PACs to other committees, and to contributions supporting or opposing the approval of a public question. I.C. § 3-9-2-6. But both sides agree none of those exceptions apply here.

Because section 3 only permits corporate contributions that sections 4, 5, or 6 authorize, and those sections do not authorize Sarkes Tarzian's contribution to the Victory Fund, the Indiana Code prohibits the contribution.

## II. The statutes are unambiguous.

The election officials argue that because the Indiana Code is silent about corporate contributions to independent-expenditure-only PACs, it does not prohibit them, and it does not regulate them at all. But the Indiana Code directs that silence *is* prohibition by saying that "[c]ontributions by a corporation or labor organization *are limited to those authorized* by sections 4, 5, and 6 of this chapter." *Id.* § 3-9-2-3(b) (emphasis added).

To that point, the election officials respond that closer scrutiny reveals the statutes are ambiguous, and we should construe them to comport with *Citizens United*, which held that limits on a corporation's independent election-related expenditures violate the First Amendment. 558 U.S. at 365. This is an invocation of the "familiar canon of statutory interpretation that statutes should be interpreted so as to avoid constitutional issues." *City of Vincennes v. Emmons*, 841 N.E.2d 155, 162 (Ind. 2006). But while the election officials argue that three features of the relevant statutes make the statutes ambiguous, we disagree.

First, the election officials point out that while section 3(b) limits corporate contributions to those authorized in sections 4, 5, and 6, section 3(a) says that corporations may make contributions to aid in electing candidates "[n]otwithstanding . . . any other statute." I.C. § 3-9-2-3. The election officials believe that section 3(a)'s statement of a "broadly granted right would be self-defeating and inherently contradictory if Sections 3

and 5 are read to permit only one possible way for corporations to contribute to PACs that is practically very similar to contributing to the candidates or party committees directly." Appellees' Principal Br. at 21.

That argument is a non-sequitur. Whether the limit on corporate contributions to PACs seems too constricting says nothing about whether there are multiple ways to reasonably interpret the text. *Fix v. State*, 186 N.E.3d 1134, 1139 (Ind. 2022) ("But when a statute permits more than one reasonable interpretation, we consider that statute ambiguous."). Moreover, the limit on contributions to PACs does not defeat section 3(a)'s more general statement authorizing corporate contributions because section 4 leaves plenty of other avenues for corporate contributions that are unrelated to PACs. And in any event, there is nothing surprising or self-contradictory about a statutory interpretation that reads the relevant provisions as not authorizing contributions to Super PACs because Super PACs did not exist when the statutes were enacted.[1]

Second, the election officials argue the statutes are ambiguous because the Indiana Code does not distinguish between "expenditures" and "independent expenditures." That argument is circular. The question is whether the statutory silence about "independent expenditures" means corporations can contribute to independent-expenditure-only PACs. It is no answer to repeat back the premise of the question, which is that the Indiana Code is silent about independent expenditures.

Third, and relatedly, the election officials point out that the Indiana Code does not distinguish between PACs and Super PACs. That is the same sort of circular argument. Again, the question is whether the

---

[1] The election officials also deride the plaintiffs' interpretation of section 3(b) as "requir[ing] special authorizing language for a corporation to make *any political donation to any entity* and that this magic language must be contained in Sections 4, 5, and 6." Appellees' Resp. Br. at 8 (emphasis added). Nobody is advocating that interpretation. As we explained above, "contribution" is a statutorily defined term that turns on the purpose and recipient of the donation. I.C. § 3-5-2-15. The only covered purposes are to influence the nomination or election of candidates to office, the election of delegates to a state constitutional convention, and the outcome of a public question. *Id.* § -15(a)(1). The only covered recipients are candidates, candidates' committees, regular party committees, PACs, and legislative caucus committees. *Id.* § -15(a)(2).

statutory silence about Super PACs means corporate contributions to them are permitted or prohibited, and again, it is no answer to repeat back the premise of the question, which is that the statutes are silent about Super PACs.

We do acknowledge one statutory ambiguity, but it does not bear on the outcome of this case. The statute defining a PAC says that a "corporation or labor organization that makes a contribution in accordance with IC 3-9-2 or makes an expenditure is not considered a political action committee." I.C. § 3-5-2-37(b). But the statutory definition of expenditure covers only disbursements by an individual, a candidate's committee, a regular party committee, or a PAC. *Id.* § 3-5-2-23(a)(2). So if section 3-5-2-37 says a corporation making an expenditure cannot be a PAC, and section 3-5-2-23(a)(2) says the only way a corporation's disbursements could be an expenditure is if the corporation is a PAC, those two provisions seem to cancel each other out.

The State does not propose an interpretation reconciling those provisions. But we need not resolve the ambiguity to answer the certified question because the State concedes the Victory Fund is a Super PAC, and it does not suggest there is a reasonable interpretation of those two provisions that would distinguish between PACs and Super PACs. So as the parties have framed the case, the question remains whether the Indiana Code prohibits corporate contributions to Super PACs, not whether the Victory Fund is a PAC in the first place.

Relatedly, we cannot definitively answer the part of the certified question asking whether the Indiana Code "otherwise limit[s] corporate contributions to . . . other entities that engage in independent campaign-related expenditures." *Ind. Right to Life Victory Fund*, 66 F.4th at 633. Because the Victory Fund is a PAC, the facts of this case do not present a context in which to examine potential limits on corporate contributions to other entities making independent expenditures. We merely note that "contribution" is a statutorily defined term, and that definition only covers donations to a candidate, a candidate's committee, a regular party committee, a PAC, and a legislative caucus committee. I.C. § 3-5-2-15(a)(2).

In short, the election officials have failed to identify any statutory ambiguity that could reasonably permit an interpretation that authorizes the contribution Sarkes Tarzian would like to make.

## III. We cannot revise unambiguous statutes through judicial interpretation to avoid a constitutional defect.

Underlying the election officials' analysis seems to be an understandable frustration that "Plaintiffs' federal case is a solution in search of a problem." Appellees' Principal Br. at 12. The election officials, at least in their briefing and supporting affidavits, have committed to not enforcing the statutes as preventing the plaintiffs' proposed contribution, and the officials agree with the plaintiffs that *Citizens United* clearly protects the right to make that contribution and other contributions like it. So the plaintiffs are suing to stop the election officials from doing something they say they have no intention of ever doing. As a shortcut to the Seventh Circuit enjoining the statutes' application to a corporate contribution to a Super PAC, why not just interpret the statutes as allowing the contribution?

We might do that if the statutes were ambiguous, but we cannot resort to the constitutional avoidance canon of statutory construction if there is no ambiguity to resolve. *See Rogers v. Martin*, 63 N.E.3d 316, 327 (Ind. 2016) ("When those words are clear and unambiguous, we simply apply their plain meaning, without resorting to other canons of statutory construction."). Otherwise, rather than interpreting an ambiguous statute, we would be rewriting an unambiguous one. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836, 200 L. Ed. 2d 122 (2018) ("[A] court relying on that canon still must *interpret* the statute, not rewrite it." (emphasis in original)). And that would run afoul of our constitutional separation-of-powers because it is the legislature that writes and revises statutes while we merely interpret and apply them. *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 108 n.21 (Ind. 1998) ("On the other hand, separation of powers prevents a court from effectively rewriting a statute to save it from constitutional infirmity."); *see also United*

*States v. Stevens*, 559 U.S. 460, 481, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) ("We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." (cleaned up)).

The election officials explain that PACs have evolved over the last thirty-five years, and they demonstrate that by pointing to a series of statutory changes reflecting that evolution. Here, both sides agree the United States Supreme Court changed the landscape for PACs in its *Citizens United* decision, paving the way for the invention of Super PACs like the Victory Fund. So it is no doubt time for the General Assembly to again update its statutes to account for this change in constitutional law. But we cannot provide a shortcut through judicial interpretation of unambiguous statues.

# Conclusion

We hold that Indiana Code sections 3-9-2-3 to -6 prohibit corporate contributions to PACs earmarked for independent campaign-related expenditures. We are mindful that the parties expect this holding will lead the federal courts to enjoin the election officials' enforcement of those statutes as applied to contributions like the one Sarkes Tarzian wishes to make to the Victory Fund. But we must leave it to the General Assembly to update its statutes to remedy any such constitutional defect, as statutory revision is beyond our authority.

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents with separate opinion.

ATTORNEYS FOR PLAINTIFFS-APPELLANTS

James Bopp, Jr.

Richard E. Coleson

Courtney Turner Milbank

Joseph D. Maughon

The Bopp Law Firm, PC

Terre Haute, Indiana


ATTORNEYS FOR DEFENDANTS-APPELLEES

Theodore E. Rokita

Attorney General of Indiana

Kyle Hunter

Assistant Section Chief, Civil Appeals

Indianapolis, Indiana

**Goff, J., dissenting.**

I respectfully disagree with the majority and would answer the certified question, "no." I reach this conclusion by inferring what the legislature most likely intends the Indiana Election Code to mean in the aftermath of *Citizens United*.

The General Assembly originally enacted Election Code sections 3-9-2-3 to -6, regulating corporate campaign contributions, in 1986. *See* Pub. L. No. 5-1986, § 5, 1986 Ind. Acts 25, 129–30. Various amendments have been made over the years, but only minor ones since 2010. The plain statutory language seems to prohibit corporate contributions to fund a PAC's independent campaign-related expenditures. Today's majority, finding no ambiguity in the text, interprets it as doing just that—although there is no sign that the legislature had such contributions in mind.

All questions of statutory interpretation begin, of course, with the statute's text. *Powell v. State*, 151 N.E.3d 256, 265 (Ind. 2020). We read the "words in their plain and ordinary meaning, taking into account the structure of the statute as a whole" and the legislature's "underlying policy and goals." *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023) (internal quotation marks omitted). Our Court has, thus, adopted a predominantly textualist approach. This method of statutory interpretation will, in most cases, promote consistency and predictability in the law. In rare cases, however, too great a focus on the text can undermine our objective to "determine and give effect to the legislature's intent." *See id.* (internal quotation marks omitted). Here, two primary considerations make it especially appropriate to do more than mechanically interpret the text: the historical context in which the case arises and this Court's role in Indiana's system of government.

First, when the General Assembly initially drafted the relevant provisions in the 1980s, the *Citizens United* decision lay far in the future. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). At that time, corporate-funded PACs had "not engaged extensively in independent campaign spending." Roberta Romano, *Metapolitics and Corporate Law Reform*, 36 Stan. L. Rev. 923, 988 n.197 (1984). It was *Citizens United* that sparked the emergence of "Super PACs," *i.e.*, organizations

"capable of unlimited fundraising for independent expenditures and unlimited non-coordinated spending." Joel M. Gora, *In Defense of "Super PACs" and of the First Amendment*, 43 Seton Hall L. Rev. 1185, 1200 (2013). This history explains, perhaps, why Indiana's statutes nowhere expressly contemplate corporate contributions for a PAC's independent expenditures.

Today, in this post-*Citizens United* era, **all parties here agree** that the First Amendment prohibits limitations on corporate contributions to independent-expenditure PACs. And it has been clear for well over a decade that, should an Indiana official seek to enforce such a restriction, they would likely subject themselves to civil damages, including attorney's fees, for violating the aggrieved corporation's federally protected rights. *See Wisconsin Right to Life State PAC v. Barland*, 664 F.3d 139, 154 (7th Cir. 2011). The defendant officials, charged with responsibility for enforcing Indiana's Election Code, have therefore interpreted the relevant provisions to avoid First Amendment problems. They regard the statutes' silence on corporate independent-expenditure contributions as implicitly setting them outside the scope of the law. And, by taking no action to amend these provisions, our colleagues in the Indiana General Assembly have apparently acquiesced in the executive branch's interpretation. In short, our colleagues in both political branches have wisely chosen not to act in violation of constitutional law. We, too, should be wary of imposing on the Code a meaning perhaps not contemplated by its authors and manifestly unreasonable in light of today's law and policy.

This is a case, then, where the meaning of "the statutory text is not clear and the original legislative expectations have been overtaken by subsequent changes in society and law." William N. Eskridge, Jr., *Dynamic Statutory Interpretation*, 135 U. Pa. L. Rev. 1479, 1484 (1987). As a result, "the pull of text and history" is weakened and the importance of "current policies and societal conditions" is greater. *Id.* Yet, in a highly unusual move, it is the plaintiff PAC and a prospective contributor who ask us to turn the clock back and interpret the law as forbidding what they wish to do.

In giving an answer to this request, we must consider our own Court's responsibilities. I see our duty as broader than merely to expound the meaning of texts. We represent one of three branches of government in a state that is itself bound into a wider national union. Our rulings should, where possible, support coherence in this constitutional order. That means offering the "cooperation that should be practiced between the independent branches of our government" and minimizing unnecessary inter-branch conflict. *See State v. Bridenhager*, 257 Ind. 699, 703, 279 N.E.2d 794, 796 (1972). We can do this when interpreting statutes by favoring "a construction of the text that will make it consistent with the larger system of law in which it is embedded." Eric S. Fish, *Constitutional Avoidance As Interpretation And As Remedy*, 114 Mich. L. Rev. 1275, 1295 (2016).

Here, conflict is needless because we can supply a workable remedy for an entirely hypothetical constitutional violation. We don't have to upset the apple-cart by substituting our own rigid textualism for everybody else's practical, commonsense understanding of the law. Rather than giving the statute an interpretation that all parties, including the enforcing officials, deem unconstitutional, a better way forward is to ask what the General Assembly "would have intended in light of the [Supreme] Court's constitutional holding." *See United States v. Booker*, 543 U.S. 220, 246 (2005) (opinion of Breyer, J.) (internal quotation marks omitted). We can presume that the legislature, in leaving the statute unchanged following *Citizens United*, did not intend to lock horns with the Supreme Court. Rather, it must have meant the statute to be read in a way that accommodated the new constitutional framework—namely, by confining the statute's scope to contributions **not** intended to fund independent expenditures, so that its operation does not transgress clearly established constitutional limits. This interpretation may not be "the most accurate account of the particular text's meaning when read in isolation," nor can we be sure whether it accords with "the intentions of the particular text's authors." *See* Fish, *supra*, at 1295. But it does "fix a contradiction" between the statute and the Constitution and harmonize with the way the law is universally understood to apply **today**. *See id.* at 1296.

This is an unusual case, calling for interpretive flexibility and sensitivity to this Court's role in helping state government to function.

Given the historical context, a focus on the plain statutory text leads us not towards but away from understanding the legislature's intent and policy and frustrates our aim of bringing consistency and predictability to the law. Ultimately, I don't believe that we have to throw a wrench into Indiana's campaign-finance system. For these reasons, I respectfully dissent.