

FILED

Jun 30 2023, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert A. Anderson
Hillary N. Buchler
Krieg DeVault LLP
Merrillville, Indiana

Libby Yin Goodknight
Krieg DeVault LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael E. Tolbert
Candace C. Williams
Tolbert & Tolbert, LLC
Gary, Indiana

Kevin C. Smith
Smith Sersic, LLC
Munster, Indiana

David W. Westland
Westland & Bennett, P.C.
Hammond, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Franciscan Alliance, Inc.,<br>*Appellant-Defendant,*<br><br>v.<br><br>City of Hammond, Indiana,<br>*Appellee-Plaintiff* | June 30, 2023<br><br>Court of Appeals Case No.<br>22A-PL-3085<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Bruce D. Parent,<br>Judge<br><br>Trial Court Cause No.<br>45D11-2212-PL-707 |

**Weissmann, Judge.**

[1]   Following years of financial losses, Franciscan Alliance, Inc. (Franciscan) moved to close St. Margaret's Hospital (the Hospital) in Hammond, Indiana, at the end of 2022. But little more than two weeks before the Hospital's closure, the City of Hammond (the City) sought a preliminary injunction to keep the Hospital open, relying on a purported promise made by Franciscan executives 17 months prior that Franciscan would not shut down the Hospital and its emergency room.

[2]   Under a tight deadline to act, the trial court granted the injunction and ordered Franciscan to keep the Hospital open for nine more months. Because the looming loss of the Hospital's licensure and accreditation at the end of the year would make it impossible to comply with the injunction, Franciscan filed an emergency motion to stay, which this Court granted on December 30, 2022.

[3]   We now find the City lacks standing and, therefore, reverse and remand to the trial court to dismiss the City's claim.

## Facts

[4]   The Hospital has operated in Hammond for over a century. Dwindling patient numbers, however, caused significant losses in recent years. To turn things around, Franciscan decided in May 2021 to downsize the Hospital to eight beds and an emergency department. A group of Franciscan executives met with the

City's Mayor, Joseph McDermott, Jr., and his executive team the next month to discuss the downsizing plans. At the meeting, the Franciscan executives stated their intent to keep the Hospital's emergency department open. The executives then reiterated this desire in a letter to Mayor McDermott the next day, writing:

> Our Hammond hospital will continue to offer an emergency department staffed with board certified emergency medicine physicians and well-trained, experienced ER nurses. Eight short-stay beds will be open and another eight-bed area shelled for expansion if volumes are sufficient to support them. As the downtown residential area grows, the hospital will grow with it.

Exhs. Vol. III, pp. 6, 22.

[5] Despite the downsizing, the Hospital's financial health continued to deteriorate, with an annualized operating loss exceeding $39 million in 2022. Recognizing this bleak future, Franciscan decided to close the Hospital completely. On November 3, 2022—roughly 17 months after the June 2021 meeting with Mayor McDermott—Franciscan sent a letter to the Mayor informing him of Franciscan's "plans for ceasing inpatient admissions in Hammond" by the "end of this year." *Id.* at 23. Franciscan moved quickly to shut down the Hospital, terminating its employment and service provider contracts effective the last day of 2022.

[6] To Mayor McDermott, Franciscan's actions were an "absolute betrayal" of Franciscan's statements at the June 2021 meeting. Tr. Vol. II, p. 34. And so, on December 19, 2022, a month and a half after receiving Franciscan's letter, the

City brought a claim for promissory estoppel against Franciscan and sought injunctive relief to keep the Hospital open. In its complaint, the City claimed that Franciscan had "renege[d]" on its "promise to keep the emergency department of [the Hospital] operational." App. Vol. II, pp. 19-20. The City alleged that Franciscan's conduct would leave "approximately 80,000 residents without immediate access to emergency medical services" and that "people [would] die as a result of [the Hospital's] closure." *Id.* Facing dual time constraints with the Hospital set to close at the end of the year and the winter holidays, the trial court set a hearing on the City's complaint for the following afternoon.

[7] Franciscan responded to the City's complaint just before the hearing. Franciscan challenged the City's standing to bring its claim and argued that it did not qualify for injunctive relief. Franciscan also argued that the City could not establish the elements of promissory estoppel, the only legal theory underlying its request for injunctive relief.

[8] After an evidentiary hearing, the trial court issued its order granting the preliminary injunction on December 22. The injunction provided:

> 1. The Court hereby enjoins [Franciscan] from closing the emergency department presently operating in downtown Hammond.
>
> 2. The emergency department is to remain open and [Franciscan] is Ordered to take all steps necessary to ensure that the facility in downtown Hammond remains legally licensed and operational.

3. [Franciscan] is prohibited, until further Order of this Court, from taking steps to diminish or in any way reduce the health care currently provided to patients at the downtown Hammond facility for a period of nine (9) months.

App. Vol. II, p. 15.

In granting the preliminary injunction, the trial court concluded that the City was "the proper party to bring this action" and that it had standing. *Id.* at 12. The trial court also determined that the City had met the requirements to obtain a preliminary injunction, including that it "demonstrated a reasonable likelihood of success on the merits of its promissory estoppel claim." *Id.* at 13-15.

After the trial court denied Franciscan's motions to stay the injunction, Franciscan appealed and filed an emergency motion to stay the proceedings and the preliminary injunction with this Court on December 28, 2022. Two days later, this Court's motions panel granted Franciscan's request, stayed the preliminary injunction, and required Franciscan to post a $100,000 appeal bond. After the resolution of Franciscan's emergency motions, this appeal proceeded in due course to address the merits of the preliminary injunction.

## Discussion and Decision

Franciscan raises two issues on appeal. It alleges that the City lacks standing to bring its claims and that the trial court erred in granting the preliminary

injunction. But because we find the standing issue dispositive, we do not reach the preliminary injunction's merits.

## I.  Standing

[12]  "Standing is a fundamental, threshold, constitutional issue that must be addressed by this, or any, court to determine if it should exercise jurisdiction in the particular case before it." *Doe v. Adams*, 53 N.E.3d 483, 495 (Ind. Ct. App. 2016) (quoting *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 989 (Ind. Ct. App. 2003)). "The main purpose of standing is to insure that the party before the court has a substantive right to enforce the claim that is being made in the litigation." *Schulz v. State*, 731 N.E.2d 1041, 1044 (Ind. Ct. App. 2000). Standing is an issue of law that we review de novo. *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022).

[13]  To establish standing, a plaintiff must demonstrate "a personal stake in the outcome of the litigation and . . . show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of-conduct." *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 217 (Ind. 2022) (quoting *Bd. of Comm'rs of Union Cnty. v. McGuiness*, 80 N.E.3d 164, 168 (Ind. 2017)). The City has not made such a showing here.

[14]  In its initial complaint and at the evidentiary hearing, the City argued that the Hospital's closure would "negatively impact" Hammond's citizens by leaving "approximately 80,000 residents without immediate access to emergency medical services." App. Vol. II, p. 10. And the City also alleged that the closure

would significantly damage the City's reputation and its ability to attract businesses. Yet even if true, any alleged negative effects on Hammond's citizens cannot sustain the City's standing. As a municipality, the City may not assert claims on behalf of its citizens. *See Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 167-68 (Ind. 2017) (holding county did not have standing to seek a declaratory judgment and injunctive relief on behalf of its residents because it lacked a "personal interest" in the case). Additionally, damages for the loss of one's reputation are not recoverable on a promissory estoppel claim. *Greives v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990) ("Damages for loss of reputation are only available in actions for libel, slander, abuse of process, malicious prosecution and third-party contract interference."). Consequently, our analysis of City's standing focuses on other grounds.

[15] City officials testified that in the short time since Franciscan announced it would close the Hospital, discussions had taken place about increased costs that may result from the closure. These potential costs included new ambulances (with a price tag of $300,000 each), costs associated with the search to find a new emergency healthcare provider, and the potential for increased legal liability stemming from delayed response times to medical emergencies. The City anticipated it would take around 18 months to adequately plan, approve a budget, and incur these costs. Because of this extended timeline, city officials blamed Franciscan for the "loss of an opportunity" to address these problems earlier when Franciscan first discussed its downsizing plans in June 2021. Appellee's Br., p. 13.

[16]    The trial court agreed with these claims. In its order granting the preliminary injunction, the trial court noted that closing the Hospital would endanger Hammond's citizens by delaying response times to medical emergencies. The court also noted the high cost of new ambulances to mitigate this danger and that the City's officials quickly began discussing the need to buy new ambulances upon learning of the Hospital's closure. Taken together, the trial court believed that Franciscan denied City an "opportunity to secure a substitute emergency care provider" and City was "in immediate danger of further suffering[] a direct injury as a result . . . ." App. Vol. II, pp. 12, 14.

[17]    But in arriving at that conclusion, the trial court improperly focused on speculative and hypothetical damages. In particular, the City's potential future purchases of new ambulances and allegations of lost time are "too remote and speculative" to constitute the "direct injury" necessary for standing. *Solarize Ind., Inc.*, 182 N.E.3d at 220. For example, the following testimony between Franciscan's counsel and the City's Fire Chief highlights the extent of the City's plans to buy new ambulances:

> Q: You were asked about ambulances, and I only want to know about ambulances that you're adding to increase capacity. Do you have ambulances under contract right now to increase your capacity due to the closing of the emergency room at [the Hospital]?
>
> A. What do you mean under contract?
>
> Q. Well, are you under contract to buy some additional ambulances or are you intending to buy additional ambulances,

not to replace old ambulances but because [the Hospital] is closing its ER?

A. It just recently came up in conversation December 13th because of what happened on December 12th. So, it's been talked about.

Q. What was the result of that?

A. The talks aren't done yet.

Q. What's that?

A. We're not done talking about it yet.

Q. Okay. So, it's under discussion.

Tr. Vol. II, pp. 93-94.

[18] To Franciscan, this exchange proves the City had no immediate plans to buy new ambulances and any alleged injury is correspondingly remote and speculative. At the same time, to the City, this conversation is proof that "[it] would be *required* to purchase new ambulances." Appellee's Br., p. 13 (emphasis added). We side with Franciscan's reading.

[19] First, the City has failed to show it "'has sustained or was in immediate danger of sustaining' a demonstrable injury." *Solarize*, 182 N.E.3d at 220 (quoting *Hammes v. Brumley*, 659 N.E.2d 1021, 1029-30 (Ind. 1995)). The City does not contend that it suffered or sustained any injury at the time of this case. Rather, it alleged that the Hospital's closure will lead to damages born out of new ambulances or the loss of prospective businesses moving to Hammond. But as city officials admitted to above, the City was not at any immediate risk of

incurring costs from new ambulances, and any "possible effect[s] on 'potential'" businesses moving to Hammond evidently "isn't a demonstrable injury." *Solarize*, 182 N.E.3d at 220.

[20] Nor has the City alleged a "direct injury" from Franciscan's conduct. The direct injury required for standing is "an injury resulting directly from a particular cause, without any intervening causes." *Solarize*, 182 N.E.3d at 220 (quoting Black's Law Dictionary (11th ed. 2019)). In *Solarize*, a company promoting the use of solar power in Indiana sought judicial review of an administrative decision by the Indiana Utility Regulatory Commission (IURC) alleging that the decision would "result in fewer people entering the solar market" and thereby reduce the company's funding. *Id.* But, as the Court noted, the IURC's decision did not directly impact the company—its theoretical injury resulted from "market forces" on the company's "potential customers and suppliers." *Id.* In essence, "this sort of 'abstract speculation'" on the "indirect result of intervening causes" does not constitute direct injury. *Id.* (citing *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995)). So too here.

[21] The Hospital's closure is not the direct cause of the City's feared harms. Indeed, the City admits as much when it links the Hospital's closure not to tangible costs or expenses, but to "a delay in response times for Hammond ambulances arriving to patients," potentially resulting in avoidable injuries that increase the City's legal liability. Appellee's Br., p.12. Just as the "market forces" in *Solarize* were an intervening cause, the potential increase in patient response times plays the same role here. The City merely fears that it will incur the cost of new

ambulances from the pressure of increased response times—which arises only indirectly from Franciscan's decision to close the Hospital. Thus, there is no direct injury traceable to Franciscan's conduct. *See, e.g., Fort Wayne Educ. Ass'n v. Ind. Dep't of Educ.*, 692 N.E.2d 902, 904 (Ind. 1998) (holding no direct injury suffered in challenge to a school board's funding decisions that would "result in less money being available for other programs"). Without more, the City lacks standing.

## Conclusion

[22] The City of Hammond lacks standing to bring this case because any alleged injury is speculative and not directly traceable to Franciscan's conduct. Accordingly, we reverse the trial court's preliminary injunction and remand to the trial court with instructions to dismiss the City's claim.

Bailey, J., and Brown, J., concur.